**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**East 81st LLC**.<br><br>Debtor | Chapter 11<br><br>Case No. **13-13685 (SMB)** |

<u>ORDER RELATING TO AUTOMATIC STAY UNDER 11 U.S.C. § 362, AND
TURNOVER UNDER 11 U.S.C. § 543, WITH RESPECT TO PREPETITION RECEIVER</u>

WHEREAS, an action entitled <u>The Board of Managers of The 215 East 81st Street Condominium v. East 81st, LLC</u>, Index No. 601516/2009 (N.Y. Sup. Ct., N.Y. Cty.) ("<u>Action 1</u>") was commenced to enforce various obligations owed by East 81st, LLC ("<u>Debtor</u>") to the Board of Managers of The 215 East 81st Street Condominium (the "<u>Condo Board</u>");

WHEREAS, Lenore Kramer (the "<u>Original Receiver</u>") was appointed as receiver (the "<u>Board Receivership</u>"), pursuant to an order of the Hon. James A. Yates dated June 7, 2010 in Action 1, with respect to various units and common areas in the condominium building at 215 East 81st Street, New York, New York (the "<u>Property</u>");

WHEREAS, a mortgage foreclosure action entitled <u>Petermark II, LLC v. East 81st, LLC</u>, Index No. 810082/2010 (N.Y. Sup. Ct., N.Y. Cty.) ("<u>Action 2</u>") was commenced against the Debtor with respect to certain condominium units at 215 East 81st Street, New York, New York that were mortgaged pursuant to various instruments (collectively the "<u>Mortgage</u>") to Petermark II, LLC (the "<u>Petermark Units</u>");

1

WHEREAS, by order of the Hon. James A. Yates dated December 22, 2010, Lenore Kramer was appointed as receiver in Action 2 with respect to the Petermark Units (the "Petermark Receivership"; the Board Receivership and Petermark Receivership being collectively called the "Board and Petermark Receiverships" or the "Receiverships");

WHEREAS, pursuant to an order of the Hon. James A. Yates dated January 19, 2011 in Action 1 and Action 2, the Original Receiver was relieved and discharged as receiver in the Board and Petermark Receiverships;

WHEREAS, Eric Anderson (the "Receiver") was appointed as the successor receiver in Action 1 and Action 2 (collectively called the "Actions") with respect to the Board and Petermark Receiverships pursuant to an order of the Hon. O. Peter Sherwood dated May 2, 2011 (the "Receiver Appointment Order"), with respect to the Petermark Units (in Action 2) and the Petermark Units and certain other units (collectively the "Sponsor Units") and the common areas (in Action 1) in the condominium building at 215 East 81st Street, New York, New York;

WHEREAS, the Petermark Receivership and the Board Receivership are separate Receiverships for which, in certain cases, the Receiver maintains separate bank accounts (the "Petermark Receivership Accounts" and the "Board Receivership Accounts", respectively);

WHEREAS, the amount presently in the Petermark Receivership Accounts is approximately $50,000.00 and the amount presently in the Board Receivership Account is approximately $6,888.00;

WHEREAS, it is the position of Petermark II, LLC ("Petermark") that the sums presently in the Petermark Receivership Accounts and any rents collected by the Receiver (pursuant to the Petermark Receivership) from the tenants in the Petermark Units (the "Rents") is cash collateral

2

of Petermark by virtue of a recorded "Assignment of Leases and Rents" dated on or about September 25, 2009 and subsequently assigned to Petermark and an assignment of rents contained within the recorded Mortgage that is the subject of Action No. 2.

WHEREAS, the Board [and Debtor] dispute that the funds in the Petermark Accounts and/or the proceeds of the Rents is cash collateral of Petermark.

WHEREAS, pursuant to an order of the Hon. O. Peter Sherwood dated July 24, 2013 (the "Accounting Order"), the Receiver's interim accounting as receiver was approved, and various payments by the Receiver were authorized as set forth therein;

WHEREAS, pursuant to a separate order of the Hon. O. Peter Sherwood dated July 24, 2013, the Receiver's receivership, pursuant to the court orders relating to his receivership (the "Receivership"), was "extended until such time as this Court issues a further order or orders with respect to the termination of the Receivership and/or some or all of the Receiver's duties";

WHEREAS, Petermark II, LLC, the plaintiff in Action 2, scheduled a foreclosure sale for the Petermark Units on November 13, 2013;

WHEREAS, the Debtor commenced this bankruptcy case on or about November 12, 2013;

WHEREAS, Gilbert A. Lazarus, Esq. of Lazarus & Lazarus, P.C., by letter dated November 14, 2013, to Eric Anderson (the "Turnover Demand"), directed Eric Anderson to turn over "Debtor's property as well as its books and records" (collectively the "Debtor's Property") in his possession;

NOW THEREFORE, upon reading and filing of (1) the Expedited Motion By Eric Anderson, Receiver, For Relief From (A) The Automatic Stay Under 11 U.S.C. § 362, and (B)

5027-1 Doc.#561

Turnover Under 11 U.S.C. § 543, (2) the Declaration of Eric Anderson, dated December 18, 2013 together with the exhibits annexed thereto, and (3) the Declaration of Brook Boyd, dated December 18, 2013, and for good cause shown therein, it is

ORDERED, that, pursuant to Section 543(d)(1) of the Bankruptcy Code, the Receiver is excused from compliance with both the Turnover Demand and Sections 543(a) and 543(b)(1) of the Bankruptcy Code, and therefore the Receiver and his agents and contractors may remain in possession, custody or control of the Sponsor Units, and the proceeds, product, offspring, rents, or profits of such property, and the common areas of the Property (to the extent the Receiver, or his agents or contractors has possession, custody or control thereof, or access thereto, pursuant to applicable court orders); and the Receiver may also continue to act as a receiver, in the ordinary course of his Receivership, pursuant to the orders, to the extent applicable to the Receiver, of the New York State Supreme Court in the Actions; and the Receiver is also specifically authorized to do the following:

a. The Receiver may make past due payments, currently totaling $6,160, to an expeditor, in order to obtain the issuance of a final major Alteration Type 1 approval that will allow clearing of both Certificate of Occupancy violations and a Stop Work Order.

b. The Receiver may make a payment (in an amount not exceeding $7,000) to, and enter into a contract with, an architect and engineer to complete emergency smoke venting at the top of a fire stair (which is a health and safety issue to be completed upon removal of the above Stop Work Order).

5027-1 Doc.#561

c. The Receiver may pay $1,750 to Next Level Elevator (which is an elevator and lift contractor) in order to make the accessibility lift in the lobby operational, so that the Alt 1 inspection is passed, and new violations, and related fines and penalties, are not issued.

d. The Receiver may pay $1,750 to "Carpentry by Reji" for providing 1) structural repairs, 2) the 2 hour rated sheet rock enclosure for two areas where bearing-wall remedial structural work was required and 3) for fabrication and installation to correct a deficient elevator lift access and operation panel.

e. The Receiver may refund, to a former tenant of Unit 2D, the $150 additional security deposit that the Receiver received on account of Unit 2D, since such tenant moved out and is now entitled to this $150 security deposit.

f. The Receiver may pay (1) accrued and unpaid October, November and December management fees ($1,000 per month to Synoptic Management), and (2) accrued and unpaid common charges for 8 Sponsor Units (totaling approximately $19,000 as of December 1, 2013) to the condominium association; and the Receiver may continue to pay future management fees and common charges with respect to the Sponsor Units at the same rate with normal increases.

g. The Receiver may engage a broker to find a tenant for unit 2D, and execute a new lease for unit 2D, which became vacant in November, 2013. The common charges on unit 2D are currently $859.83 per month, and the rental value of unit 2D is approximately at least $2,600 per month (which was the rent paid by the tenant of unit 2D who moved out in November, 2013.

h. The Receiver may continue to collect rents from the tenants in the Petermark Units.

i. The Receiver may make all payments that are authorized to be made by the Accounting Order.

j. The Receiver shall be entitled to be reimbursed for all of his reasonable fees and expenses (including, without limitation, the reasonable fees and disbursements of his counsel), to the extent incurred in connection with the respective Receiverships, in accordance with Section 543(c)(2) and any other applicable provisions of the Bankruptcy Code.

k. Pursuant to the provisions of this decretal subparagraph (k), the Receiver may make any other payments, and take any other actions, in the ordinary course of the Board and Petermark Receiverships, pursuant to the existing orders of the New York State Supreme Court that are applicable to the Receiver, provided that the Receiver shall not spend, or incur liabilities, aggregating more than $20,000, pursuant to this subparagraph k, in any three-month period, beginning with the period from December 1, 2013 to February 28, 2014 (all payments, reimbursements, and other actions specified above in this paragraph, including, without limitation, in the foregoing subparagraphs a-k, and all other payments, reimbursements and other actions that are incidental thereto, being collectively called the "<u>Permitted Actions</u>"); and it is further

l. A. The payments set forth in the above subparagraphs "a", "b", "c" "d" hereof, and other expenses accruing with respect to the Board Receivership,

*5027-1 Doc.#561*

may be made by the Receiver in the first instance from the Board Receivership Account, to the extent funds are available in such account.

B. The payments set forth in, or made necessary by, the above subparagraphs "e", "f" and "g" hereof, and other expenses accruing with respect to the Petermark Receivership, may be made by the Receiver from the Petermark Receivership Account, to the extent funds are available in such account.

C. The reimbursements provided for in the above subparagraph "j" may be made by the Receiver from the Board Receivership Account with respect to fees and expenses that are reasonably allocated by the Receiver to the Board Receivership; and the reimbursements provided for in the above subparagraph "j" may be made by the Receiver from the Petermark Receivership Account with respect to fees and expenses that are reasonably allocated by the Receiver to the Petermark Receivership;

D. (i.)  To the extent that funds need to be expended for the purposes of paying any expenses of the Board Receivership or otherwise relating to the building at 215 East 81st Street in general (as opposed to expenses relating specifically to the Petermark Receivership or any of the Petermark Units) that exceed the amount of available funds in the Board Receivership Account, the Receiver may utilize available funds in the Petermark Receivership Accounts (which funds Petermark posits are its cash collateral, but which position the Board [and Debtor] dispute), provided that Petermark approves such expenditures (which approval shall not be unreasonably withheld).

5027-1 Doc.#561

(ii.) The Board, Petermark [and the Debtor] hereby agree that the issue of whether the funds in the Petermark Account and/or the Rents are Petermark's cash collateral and/or whether Petermark is entitled to be reimbursed and/or credited for the Receivers' use of such funds (whether through cash payments, common charge credits, condominium assessment credits or otherwise) will be left for determination by a Court of competent jurisdiction if necessary and all such rights of Petermark, the Board [and/or the Debtor] in this regard are expressly reserved hereby.

ORDERED, that the Receiver, and his agents and contractors, are excused, in connection with the Permitted Actions, from compliance with any obligations imposed by the Bankruptcy Code pursuant to 11 U.S.C. 362, and the stay pursuant to 11 U.S.C. § 543(a) (collectively called the "Stays"); and any Stays in this bankruptcy case are annulled, in connection with the Permitted Actions, with respect to the Receiver, and his agents and contractors, and his Receivership, the Property, and all other records, funds and other property that the Receiver may now hold or possess, or may in the future hold or possess, provided, however, that the Receiver shall also remain subject to the jurisdiction of the New York State Supreme Court ("Receiver's Appointing Court") with respect to the Permitted Actions; and it is further

ORDERED that the Debtor or its representatives shall have access to the Receiver's records relating to or concerning the Debtor or the Debtor's Property, including but not limited to, the Sponsor Units, on one (1) business day's notice; and it is further

ORDERED, that this Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code; and it is further

ORDERED, that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is hereby waived; and it is further

ORDERED that that this Order shall be without prejudice to the Debtor's right, or the right of the Condo Board or Petermark II, LLC, to make a motion in this bankruptcy case for a subsequent order (the "Subsequent Order"), except as otherwise directed by the Bankruptcy Court, on at least 14 days notice to the Receiver and his counsel, amending, modifying or vacating this Order , except that the Subsequent Order shall be prospective from the date that the Subsequent Order is issued (after such 14 days notice), and shall not be retroactive, and the Receiver and his agents shall not be liable on account of any act or omission that violates any Stay pursuant to the Subsequent Order but that occurs before the date that the Subsequent Order is served on the Receiver and his counsel; and it is further

ORDERED, that, subject to the terms of this Order, the Debtor shall have the right to continue to administer its Chapter 11 case, including but not limited to, the filing of a plan of reorganization and the filing of a disclosure statement in connection therewith; and it is further

ORDERED, that nothing in this Order shall be deemed to alter the rights of the parties except as expressly provided herein. The terms of this Order shall not survive a dismissal or closing of the Debtor's bankruptcy case.

Dated: January 2nd, 2014

        /s/ STUART M. BERNSTEIN
        STUART M. BERNSTEIN, U.S.B.J.