UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X     Case No.: 13-13685 (SMB)
In Re:

      EAST 81st, LLC                              In Proceedings For
                                                     Reorganization
                                                     Under Chapter 11

      Debtor and Debtor-in-Possession.
---------------------------------------------------------------X
STATE OF NEW YORK    )
                             )Ss.:
COUNTY OF NEW YORK  )

**<u>AFFIDAVIT OF BEN-ZION SUKY IN OPPOSITION TO THE MOTION OF PETERMARK II, LLC FOR: AN ORDER TO DISMISS OR CONVERT THE DEBTOR'S CHAPTER 11 CASE TO A CHAPTER 7 CASE, PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE, OR, ALTERNATIVELY, TO VACATE THE AUTOMATIC STAY, PURSUANT TO SECTION 362(d)(1),(2) AND/OR (3) OF THE BANKRUPTCY CODE, OR, ALTERNATIVELY, FOR AN ORDER TO ABSTAIN, PURSUANT TO SECTION 305 OF THE BANKRUPTCY CODE</u>**

Ben-Zion Suky, being duly sworn, deposes and states:

### INTRODUCTION

1. I am a member of East 81st Parent Holding, LLC ("East 81st Parent Holding"). East 81st Parent Holding is the sole member of the debtor, East 81st, LLC (the "Debtor").

2. I submit this affidavit in opposition to the motion of Petermark II, LLC ("Petermark") to dismiss or convert the Debtor's Chapter 11 case, to vacate the Automatic Stay, or, alternatively, to dismiss and abstain (the "Motion").

3. The Petermark Motion should be denied as Petermark is adequately protected during the pendency of the Debtor's Chapter 11 case as the Debtor attempts to restructure and reorganize under the Bankruptcy Code, the Debtor has a reasonable possibility of confirming a Chapter 11 Plan of Reorganization within a reasonable time, and, under the circumstances of this case, the Debtor deserves the right to make a case for confirmation for its plan of reorganization.

### GENERAL BACKGROUND

1

4. I have 12 years of experience in owning, operating and developing both commercial and residential property in and around the New York City area.

5. The Debtor is the owner of the condominium units located at 215 East 81st Street, New York, New York, consisting of the residential units 2D, 3A, 5H, 5C, 6C and 6B and the commercial units LA and LB (collectively, the "Property").

6. The Property is located in the Upper East Side, one of New York City's most desirable communities.

7. The Property is subject to the mortgage held by Petermark.

8. The Debtor's financial difficulties were primarily caused by a dispute with its contractor for the work performed on the premises at 215 East 81st Street, LLC, which resulted in increased costs and a restriction in the Debtor's cash flow. This lack of cash flow, in turn, precipitated the default under the lending agreements with Petermark and impeded the Debtor's ability to fund all of the work on the premises at the 215 East 81st Street property.

9. As a consequence, actions were commenced by both Petermark and the Board of Managers of 215 East 81st Street Condominium with the resulting appointment of a receiver (the "Receiver") in the state court actions entitled (a): *"The Board of Managers of the 215 East 81st Street Condominium, et. al. v. East 81st, LLC, et. al., Index No.: 601516/2009*, Supreme Court of the State of New York, County of New York; and (b) *Petermark II, LLC v. East 81st, LLC, et al., Index No.:810082/2010*, Supreme Court of the State of New York, County of New York (the "State Court Actions").

10. Since the appointment of the Receiver, the Debtor has not had access to, or control of, the income derived from the Property.

## THE CHAPTER 11 BANKRUPTCY FILING

11. The Chapter 11 case was commenced on November 12, 2013 in the immediate period prior to the Petermark foreclosure sale of the Property but only after the ongoing negotiations between the Debtor and Petermark collapsed.

12. The Chapter 11 case was commenced to preserve the substantial value of the Property for the benefit all of the Debtor's creditors.

2

13. At the time of the commencement of the Debtor's Chapter 11 case, the Debtor owed (a) $3,873,630.58 to Petermark (pursuant to the Judgment of Foreclosure entered on July 24, 2013) and (b) approximately $630,000 to its general unsecured creditors.

## PETERMARK IS ADEQUATELY PROTECTED AS THE PROPERTY HAS A SUBSTANTIAL EQUITY CUSHION

14. Pursuant to the appraisal attached to this Affidavit as Exhibit "A", the Property has a value of 7.2 million dollars. Since the debt to Petermark is $3,873,630.58, as of July 24, 2013, ("Petermark Secured Claim") there is a substantial "equity cushion". [1]

15. In addition, the Property is not declining in value. As pointed out in the accompanying appraisal attached as Exhibit "A", at page 21, the condominium market in New York City is considered strong in demand and pricing is a near historical high levels. Moreover, the Property is insured as acknowledged in paragraph 78 (c) of the Petermark Application.

16. Importantly, the Property will remain under the control and management of the Receiver. Pursuant to an interim arrangement, as set forth in the proposed order to be submitted to the Court, a copy of which is attached as Exhibit "B", the Receiver, pending further order of this Court, will be excused from compliance with the Debtor's turnover demand under Section 543(a) of the Bankruptcy Code and is expressly authorized to undertake specific repairs to, and otherwise maintain, the Property. [2]

## THE PROPERTY IS ESSENTIAL TO THE DEBTOR'S REORGANIZATION

17. The Property is absolutely essential to the Debtor's successful reorganization efforts. As discussed below, the Debtor's proposed plan of reorganization

---

[1] It is not clear how Petermark arrives at its figure of 4.5 million dollars as the debt owed. Since the Judgment of Foreclosure was entered on July 24, 2013, in the sum of $3,873,630.58, and interest is accruing at the rate of $32,442 per month, according to Petermark's calculation, the 4.5 million dollar figure appears inflated.

[t] The order further provides that the Debtor is authorized to continue to administer its Chapter 11 case, including, but not limited to, the filing of its plan of reorganization and the disclosure statement in connection therewith.

3

contemplates funding from both the third party acquisition of a membership interest in East 81st Parent Holding as well as the income (rents) derived from the Property.

## THE DEBTOR CAN FORMULATE AND CONFIRM A CHAPTER 11 PLAN OF REORGANIZATION

18. The Debtor can, and anticipates it will, file a confirmable plan of reorganization by February 10, 2014, the deadline imposed by the Bankruptcy Code for a single asset real estate case such as this ("Plan Deadline").

19. The Debtor currently anticipates that the funding for its plan of reorganization will be from (a) revenue (rents) derived from the operations of the Property as set forth in the Income and Expense projection attached hereto as Exhibit "C"[3] and (b) a third-party who has indicated his willingness to acquire a membership interest in East 81st Parent Holding. Funds generated from this membership acquisition will be used to support and fund the proposed plan of reorganization. A copy of the proposed letter of intent is attached as Exhibit "D".

20. The Debtor currently anticipates filing a plan of reorganization by the Plan Deadline that provides:

    a. Payment in full to Petermark over a period of one hundred twenty (120) months with a balloon payment at the expiration of this period, with ten (10%) percent of its allowed claim paid on confirmation of the Debtor's plan of reorganization, interest calculated at market rate and amortized over thirty (30) years;

    b. A payment to general unsecured creditors on confirmation of the Debtor's plan of reorganization equal to fifty (50%) percent of the allowed unsecured claims;

    c. Tax claims paid in full over a period ending not later than five (5) years after the date of the order of relief.

21. In the event Petermark does not consent to the treatment described above, a plan of reorganization may still be confirmed. Petermark is fully secured. There is no

---

[3] These projections contemplate the renovations of the commercial space and income earned in connection therewith starting in August, 2014.

4

deficiency claim. As such, Petermark cannot veto the proposed treatment of the class of general unsecured claims. With at least one impaired, accepting class of creditors, I am advised by counsel, the Debtor can effect a "cram-down" of its plan of reorganization pursuant to Section 1129(b) of the Bankruptcy Code.

### THE BANKRUPTCY IS IN THE BEST INTEREST OF THE DEBTOR AND ITS CREDITORS

22. The Petermark Motion should be denied as the pending bankruptcy is in the best interests of both the Debtor and its creditors.

23. In the event the Petermark Motion is granted, the most likely outcome is a foreclosure sale that pays the Petermark claim in full with little or no further payments to any of the Debtor's other creditors.

24. On the other hand, affording the Debtor an opportunity at reorganization and restructuring through the provisions of the Bankruptcy Code provides a greater likelihood that each of the creditors will receive a larger, equitable return on their claim than if Petermark foreclosed on the Property.

Sworn to before me this
2nd day of January, 2014

/S/ Notary Public
Notary Public No.: 02LA4966885 Expires July 21, 2014

            /S/  Ben-Zion Suky
               Ben-Zion Suky